IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAVID BERRY, #232-983 | * | |
| Plaintiff | * | |
| v. | * | CIVIL ACTION NO. L-10-3617 |
| WARDEN J. PHILIP MORGAN, et al. | * | |
| Defendants | * | |

********

**MEMORANDUM**

Now pending is the Motion of Defendants, Warden J. Philip Morgan and Commissioner of

Correction J. Michael Stouffer, to Dismiss or for Summary Judgment.  Docket No. 11.  Upon review

of the papers and exhibits filed by the parties, the Court finds oral hearing unnecessary.  See Local

Rule 105.6 (D. Md. 2011).  For the reasons stated herein, the Court will, by separate Order of even

date, GRANT the Motion.

**I.   Background**

Plaintiff, an inmate formerly designated to the Western Correctional Institution ("WCI") in

Cumberland, Maryland, alleges that, on July 4, 2010, he was stabbed repeatedly by unidentified

fellow inmates.  His Complaint states that Officer Jonathan Presnell saw the other inmates descend

upon him, and that a weapon was later recovered.  Plaintiff also alleges that, at some point, a metal

detector had been moved from WCI Housing Unit 3, where he was housed, and that staff

discontinued a practice of patting down inmates any time they left the housing unit *en masse*.

Plaintiff states that Housing Unit 3 is known as "The Gang Building" and is "a veritable dumping

ground for inmates labeled as trouble makers."  Compl. 3, Docket No. 1.

The uncontroverted record evidence submitted by the Defendants establishes that, on the date in question, Officer Presnell first observed a brief shoving match among several inmates, including Plaintiff, who were returning to Housing Unit 3 from the dining hall.  Presnell radioed for assistance and advised that a fight was in progress.  Plaintiff jumped from the path to the grass and challenged the others, yelling "come on!"  The other inmates, Edgar Davis, Jeremiah Jones, and Rasheen Henry, then ran onto the grass and began exchanging blows with Plaintiff.  Presnell ordered the inmates to stop, but only Henry complied; Davis and Jones continued to chase and hit Plaintiff.  In the end, Presnell and another officer were forced to deploy pepper spray.  Davis, who was in possession of "a homemade knife type weapon," was sprayed multiple times before finally dropping the weapon and allowing himself to be handcuffed.  See Defs.' Mot. Summ. J. Ex. 1, Docket No. 11-3 (Internal Investigative Unit Report).

Plaintiff was examined in the prison's medical department and subsequently transferred to Western Maryland Medical Center, where he was treated for multiple stab wounds and a punctured lung.

**II.  Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty</u> <u>Lobby, Inc.</u>, 477 U. S. 242, 247–48 (1986) (emphasis original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" <u>Bouchat v. Baltimore Ravens Football Club, Inc.</u>, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." <u>Dennis v. Columbia</u> <u>Colleton Med. Ctr., Inc.</u>, 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." <u>Bouchat</u>, 346 F.3d at 526 (internal quotation marks omitted) (quoting <u>Drewitt v. Pratt</u>, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323–24 (1986)).

## III.   Analysis

Plaintiff alleges that all named Defendants were deliberately indifferent in failing to provide adequate supervision and security to protect him and, as such, violated his Eighth Amendment right to be free from cruel and unusual punishment.

As noted by the Supreme Court in <u>Farmer v. Brennan</u>,

Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective

3

any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

511 U.S. 825, 833 (1994) (internal quotations and citations omitted). Not all injuries at the hands of other prisoners are actionable, however. In a failure-to-protect claim, a prisoner must show, first, that the harm he suffered was objectively serious, and second, that prison officials acted with deliberate indifference. Id. at 834.

The undisputed evidence reveals that Plaintiff was stabbed repeatedly and that he suffered multiple injuries, including a punctured lung, that required treatment in the emergency room and prison infirmary. See Compl. Ex. 1, Docket No 1-1; Defs.' Mot. Summ. J. Ex. 1, Docket No. 11-3. Clearly, he has satisfied the first prong of the Farmer test. The second element is more problematic.

Deliberate indifference in the context of a failure to protect means that an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Unless a prison official actually makes this connection, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy. Rich v. Bruce, 129 F.3d 336, 339–40 (4th Cir. 1997); see also Lewis v. Richards, 107 F.3d 549, 553 (7th Cir. 1997) ("[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety.").

In this case, there is simply no evidence before the Court that Defendants were deliberately indifferent to Plaintiff's safety. Nothing in the record suggests that any prison personnel had reason to suspect that Plaintiff would be the target of, as he calls it, "a gang hit." Compl. 3, Docket No. 1.

Plaintiff does not allege, nor is there any evidence, that he notified any staff member that he was in fear for his safety.  Rather, the evidence demonstrates that the officers on duty responded in a timely and professional manner to what, from their perspective at least, was a purely spontaneous assault. Moreover, there is no factual basis for an inference that, if the metal detector were moved and pat down searches limited as Plaintiff claims, such action was taken in deliberate disregard of inmate safety.

In a prison setting, confrontations among inmates are, lamentably, a daily occurrence.  While recognizing that advance notification of a substantial risk of assault posed by a particular fellow prisoner is not required to sustain a claim under the Eighth Amendment, Farmer 511 U.S. at 849, the Court concludes that record is devoid of evidence that Defendants were subjectively aware that Plaintiff was in danger.   Indeed, Plaintiff admitted that even he was unaware of why he was assaulted.  See Def.'s Opp. 2, Docket No. 15.  Moreover, none of the assailants was on Plaintiff's "known enemies" list prior to the assault.[1]  In short, Plaintiff has failed to come forth with any evidence that prison officials were, in fact, aware of a risk to his safety.

To the extent that the Defendants were aware of the risk of harm as soon as the altercation began, the evidence of record does not demonstrate that Defendants were deliberately indifferent to the consequences.  "Prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.  A prison official's duty under the Eighth Amendment is to ensure "'reasonable safety.'"  Id. at 844.  The officers on duty responded promptly to end the fight by ordering the

---

[1]       During the investigation of the assault, Plaintiff declined to be interviewed or press charges against his attackers.  After the investigation was complete, Davis was charged criminally.  Plaintiff has been transferred from WCI to the North Branch Correctional Institution.  His attackers remain at WCI and their names have been added to

inmates to cease, radioing for assistance as soon as they became aware of the attack, and using reasonable force in the form of pepper spray.  Although they were regrettably unable to restore order before Plaintiff was injured, this alone does not subject them to liability.

Plaintiff, as the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence from which a fact-finder could reasonably find in his favor.  Plaintiff has failed to submit evidence to support his claim, or to put the material fact of this case—the Defendants' alleged failure to protect him—in dispute.  His Complaint describes nothing more or less than a spontaneous attack upon him, an incident all too familiar in a prison context.  Accordingly, Defendants' Motion must be granted.[2]

## IV.  Conclusion

For the foregoing reasons, Defendants' Motion, construed as a Motion for Summary Judgment, shall be GRANTED.   A separate Order follows.

Dated this 29th day of December, 2011                /s/
_____
Benson Everett Legg
United States District Judge

_____

his enemies list.  See Docket Nos. 11-3, 11-8, and 11-9.

[2]      The named Defendants would also be entitled to judgment on the basis that, as Warden and Commissioner of Correction, they were not personally involved in the events surrounding Plaintiff's claims.  In cases brought under 42 U.S.C. § 1983, there is no *respondeat superior* liability.  This means that there must be personal involvement by the defendants in the alleged violation.  A supervisor will only be held liable if the Plaintiff can demonstrate that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).  Because Plaintiff's claim fails as a matter of law, the Court need not concern itself with the question of who the proper defendant or defendants might be.